**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**


| | | |
|---|---|---|
| KEVIN ERIC WHALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 18-720-MN-MPT |
| | ) | |
| NANCY A. BERRYHILL | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |


## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This action arises from the denial of Plaintiff's claim for Social Security benefits. On August 13, 2015, Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").[1]  In his initial application and disability report, Plaintiff alleged disability as of April 24, 2015 due to several physical impairments, including shunt malfunction, headaches, and hydrocephalus.[2]  The state agency initially denied his claim on December 1, 2015, and denied it again on June 22, 2016, upon reconsideration.[3]  On June 24, 2016, Plaintiff filed a request to have a hearing before an Administrative Law Judge ("ALJ").[4] Subsequently, the ALJ granted Plaintiff's request for critical case processing, expediting

---

[1] D.I. 20 at 1.
[2] *Id.*
[3] D.I. 9-2 at 11.
[4] *Id.*

his claim.[5]  On November 1, 2017, ALJ Jack S. Penca heard Plaintiff's claim.[6]  Plaintiff

and a vocational expert, Vanessa J. Ennis (hereinafter referred to as "Ennis") testified.[7]

In a decision dated November 30, 2017, the ALJ found Plaintiff did not qualify as

"disabled" under the Act and denied his request for benefits.[8]  Following the ALJ's

unfavorable decision, Plaintiff filed a request for review, which the Appeals Council

subsequently denied.[9]  On November 14, 2018, he filed a timely appeal with this court.[10]

The parties present cross motions for summary judgement before this court.[11]  For the

reasons herein, the court recommends Plaintiff's motion be denied and Defendant's

motion be granted.

## II.    BACKGROUND

Plaintiff, born on January 16, 1971,[12] had a shunt placed after a physician

diagnosed him with hydrocephalus at eight months of age.[13]  He received a high school

education and has worked as a machine operator and security officer.[14]  On April 24,

2015, at age 43 years old, Plaintiff claimed disability as a result of a shunt malfunction[15]

and has not worked since.[16]

Given Plaintiff's impairments, the ALJ confirmed certain limitations in Plaintiff's

---

[5] D.I. 9-2 at 11.
[6] D.I. 20 at 1.
[7] D.I. 9-2 at 11.
[8] *Id.* at 21.
[9] D.I. 20 at 2.
[10] D.I. 15 at 1.
[11] D.I. 15 at 1-2; D.I. 19 at 1-4.
[12] D.I. 16 at 2.
[13] D.I. 20 at 3.
[14] *Id.*
[15] *Id.*
[16] D.I. 16 at 2.

ability to perform work.[17]  In Plaintiff's initial claim for DIB, he stated that due to his

shunt malfunction, his physical impairments, headaches, and hydrocephalus effected

his ability to work.[18]  At the time of the alleged disability, Plaintiff experienced increasing

headaches.[19]  He underwent shunt revision surgery in June 2015.[20]  In 2016, his shunt

was again replaced.[21]  Despite the shunt functioning properly, he continued to

experience headaches.[22]  Additionally, between January 2016 and June 2016,

physicians treated Plaintiff for degenerative disc disease of the cervical spine,

depression, and abdominal pain.[23]  Despite Plaintiff's impairments and inability to

perform past relevant work, the ALJ found him not disabled and capable of working.[24]

To be eligible for benefits, Plaintiff must demonstrate that he has a disability as defined

by the Act, discussed below.

### A.    Evidence Presented

Plaintiff allegedly suffers from a myriad of health issues, the combination of

which he claims inhibits his ability to perform any substantial gainful activity.[25]  Plaintiff

provided numerous medical records of his healthcare providers' diagnoses and

treatments that span from April 2015[26] to October 2017.[27]  According to the record, the

---

[17] D.I. 9-2 at 18.
[18] *Id.* at 16.
[19] D.I. 16 at 2.
[20] *Id.*
[21] D.I. 9-2 at 34-35.
[22] *Id.*
[23] D.I. 16 at 2.
[24] D.I. 9-2 at 20-21.
[25] *Id.* at 16.
[26] D.I. 9-8 at 296.
[27] D.I. 9-25 at 1374.

ALJ found certain limitations supported Plaintiff's ability to perform work activities,[28] but his statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were inconsistent with the medical information and other evidence of record.[29]

### 1.    Physical Impairments

Plaintiff was diagnosed with hydrocephalus for which a shunt was inserted when he was eight months old.[30]  In April 2015, Plaintiff experienced increasing headaches and a shunt malfunction.[31]  Due to repeated shunt infections, Plaintiff underwent shunt revision in May 2015.[32]  Following the shunt revision, Plaintiff complained of significant fatigue.[33]  Besides fatigue, the shunt appeared to function adequately.[34]  In June 2015, Plaintiff experienced significant headaches, contracted another shunt infection, and the shunt was removed.[35]  In July 2015, a treatment note indicated Plaintiff "doing well from a neurological standpoint" and "the pain [he] is still having . . . should resolve in time."[36]  A subsequent treatment note in August 2015 stated Plaintiff "is slowly improving" and "needs to continue to slowly increase his activities."[37]  A September 2015 office note indicated Plaintiff doing better, but he still experienced residual symptoms which his

_____

[28] D.I. 9-2 at 18.
[29] *Id.* at 16.
[30] D.I. 20 at 3.
[31] D.I. 16 at 2.
[32] D.I. 9-2 at 17.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] D.I. 9-9 at 378.
[37] *Id.* at 380.

physician treated conservatively.[38]  This note also stated that the "shunt is working fine,"[39]  a particularly relevant entry since Plaintiff claims the ALJ failed to give deference to the treating physician's opinions.[40]  In September 2015, his primary care physician noted Plaintiff "feeling much better" and having no complaints of pain.[41]  Furthermore, during an October 2015 visit, Plaintiff expressed no complaints of pain.[42]  A CT scan in December 2015 was negative for hydrocephalus and acute intracranial abnormality, with no evidence of shunt failure or infection.[43]

In February 2016, Plaintiff experienced significant right sided flank pain which his physician felt was not caused by the shunt.[44]  Plaintiff complained of increased headaches in September through October, but again there was no evidence of shunt failure.[45]  In October, Plaintiff claimed that his headaches increased upon standing and improved on laying down.[46]  His physician noted possible over drainage, but the shunt worked properly.[47]  Plaintiff experienced shunt failure with significant symptoms in December 2016, which led to a hospital admission and shunt revision.[48]  After a post revision follow up visit, Plaintiff was doing well, except for having mild headaches and tenderness along his left anterior chest.[49]  Ten days after this follow up visit, Plaintiff

---

[38] D.I. 9-2 at 17.
[39] D.I. 9-9 at 382.
[40] D.I. 16 at 3.
[41] D.I. 9-8 at 346.
[42] D.I. 9-12 at 613.
[43] D.I. 9-2 at 17.
[44] *Id.*
[45] *Id.*
[46] D.I. 9-13 at 671.
[47] *Id.* at 672.
[48] D.I. 9-2 at 17.
[49] *Id.*

complained of increased head pressure over a two day period and had worsening headaches that did not improve with medication.[50]  At a subsequent follow up visit in mid-June 2017, he continued to complain of headaches and abdominal pain.[51]  The imaging studies reported "relatively unremarkable" results, and a CT scan of the brain was stable.[52]  During an office visit at the end of June 2017, there was no evidence of shunt dysfunction, and Plaintiff's shunt remained intact.[53]  At a subsequent office visit in July 2017 for recurrent headaches, Plaintiff's headaches improved since a prior visit.[54]

Plaintiff also had multilevel degenerative disc disease in the cervical spine.[55]  In December 2015, a doctor's note states that Plaintiff complained of significant neck pain with numbness and tingling of his hands.[56]  An MRI of the cervical spine in January 2016 for post fusion surgery revealed that small disc bulges at the C4-C5 and C5-C6 levels causing mild to moderate spinal stenosis and mild bilateral foraminal stenosis, and the small disc bulges of the C3-C4 and C6-C7 levels evidenced mild to moderate bilateral foraminal stenosis at the C6-C7 level.[57]  During a follow up visit in January 2016, Plaintiff continued to complain of numbness in his hands and difficulty holding items.[58]  An examination showed neck tenderness with diminished range of motion.[59]

---

[50] *Id.*
[51] D.I. 9-25 at 1355.
[52] *Id.*
[53] *Id.* at 1358.
[54] D.I. 9-24 at 1310.
[55] *Id.* at 1291.
[56] D.I. 9-12 at 578.
[57] *Id.*
[58] *Id.* at 576.
[59] *Id.* at 577.

An MRI of the cervical spine revealed a solid fusion.[60]  His physician assessed that Plaintiff had a congenitally narrow canal with mild spinal stenosis.[61]  In June 2017, an x-ray confirmed Plaintiff had multilevel degenerative disc disease in the cervical spine.[62]

## 2. State Agency Assessment

After Plaintiff filed for disability in 2015, the agency found him not disabled.[63] The Disability Determination Explanation dated December 1, 2015 contains an assessment of Plaintiff's impairments.[64]  The agency found Plaintiff had some limitations in the performance of certain work activities, but determined he had the RFC to perform his past relevant work as a security officer.[65]

Consistent with the ALJ's findings, the agency concluded Plaintiff's statements about the intensity, persistence, and functionality limiting effects of his symptoms not corroborate with the objective medical evidence.[66]  The agency's RFC assessment found Plaintiff capable of performing light work, occasionally able to lift and/or carry 25 pounds, frequently able to lift and/or carry 20 pounds, and could stand, walk, and/or sit with normal breaks for 6 hours during an 8 hour work day.[67]  The agency did not determine exertional limitations in pushing and/or pulling, but found that he had an environmental limitation to avoid concentrated exposure to vibration.[68]

---

[60] *Id.*
[61] *Id.*
[62] D.I. 9-24 at 1291.
[63] D.I. 9-3 at 63.
[64] *Id.* at 65.
[65] *Id.* at 63.
[66] *Id.* at 62.
[67] *Id.* at 60-61.
[68] *Id.* at 61.

No mental assessment occurred because Plaintiff did not allege any such impairment.[69]  However, Plaintiff's alleged physical impairments were reevaluated by the agency.[70]  On reconsideration, the agency's DDS medical consultant affirmed the findings of the initial DDS medical consultant's findings, with slightly different exertional limitations.[71]  The second consultant determined Plaintiff as capable of performing light work, occasionally able to lift and/or carry 20 pounds versus 25 pounds, and frequently able to lift and/or carry 10 pounds versus 20 pounds.[72]  Despite the difference between the consultants' findings, both classified Plaintiff as not disabled.[73]

### B.    Hearing Testimony

#### 1.    Plaintiff's Testimony

At the hearing on November 1, 2017, Plaintiff testified regarding his daily routine, work history, and alleged disability.[74]  His daily routine consists of waking up around 7:00 a.m., making himself a cup of coffee, straightening out his bed, and periodically laying down.[75]  Plaintiff lives with his wife and two adult daughters.[76]  Plaintiff claims that his daughters handle the majority of household chores, but he does collect his dirty laundry which he takes to the laundry room for his wife to wash.[77]  Plaintiff testified that he and his wife "just . . . try to take care of each other."[78]  When not laying down, he

---

[69] *Id.* at 55, 66.
[70] *Id.* at 66-79.
[71] *Id.* at 75.
[72] *Id.* at 60, 75.
[73] Id. at 63, 79.
[74] *See generally* D.I. 9-2 at 33-49.
[75] D.I. 9-2 at 41.
[76] *Id.* at 42.
[77] *Id.*
[78] *Id.* at 43.

watches television.[79]  Sometimes he remains on his feet for two hours, but he then lays down.[80]  When necessary, Plaintiff will go shopping, but does not drive longer than a half hour.[81]  If he needs to travel more than a half hour, someone else will drive.[82]

Plaintiff last worked in 2015 for Gaming Entertainment of Delaware as a security officer.[83]  Prior to this position, he was employed as a machine operator for Solo Cup.[84]  Plaintiff stopped working on April 24, 2015 when he felt disoriented, was transported to the hospital by ambulance, and learned that his shunt stopped functioning.[85]  Plaintiff alleges that he suffers from numerous complications, not all of which appeared in his initial claim for disability.[86]

Subsequent to the April 2015 hospitalization, Plaintiff testified that he underwent surgery for a shunt replacement, which provided temporary relief.[87]  Thereafter, due to an infection, he began experiencing headaches, which led to removal of all shunts and was administered antibiotics to treat the infection.[88]  Since the 2015 surgery, he had only one shunt replacement in 2016.[89]  Plaintiff testified that he continues to suffer from constant headaches, which intensify while sitting, but improve when lying down and taking his prescribed medications, Imitrex and zonisamide.[90]  On a scale of one to ten,

---

[79] *Id.* at 41.
[80] *Id.*
[81] *Id.* at 43-44.
[82] *Id.* at 44.
[83] *Id.* at 49.
[84] *Id.* 48-49.
[85] *Id.* at 33.
[86] *Compare* D.I. 9-2 at 34-35, 38-39, 44-45 *with* D.I. 9-3 at 55.
[87] D.I. 9-2 at 33-4.
[88] *Id.*
[89] *Id.*
[90] *Id.* at 35-36.

Plaintiff rated his headaches at "about a seven" at their worst and at "about a two" at their best.[91]

Plaintiff claims to also suffer from abdominal pain,[92] short-term memory loss,[93] depression,[94] and lower lumbar pain,[95] complaints not included in his initial claim for DIB.[96]  With his abdominal pain, he experienced a lot of pressure on his left side.[97] Concerning his memory, he forgets what he was told "maybe two minutes ago."[98]  As for the lower lumbar pain, Plaintiff testified that the pain level increases at times "up to about an eight."[99]  He claimed that he has not returned to his back pain specialist because of the shunt, which is his major concern.[100]

Further elaborating on his symptoms, Plaintiff testified that he has continual numbness in his hands, with significant difficulty grasping certain objects.[101] Furthermore, Plaintiff asserted that he has fractures in his ankle and plans to schedule an appointment with a podiatrist.[102]  When asked about the amount of weight he can lift, Plaintiff stated, "not even ten pounds."[103]  When examined about his sitting limitations, Plaintiff stated that he could sit for "not too long."[104]  During the hearing, Plaintiff

---

[91] *Id.* at 37.
[92] *Id.* at 38.
[93] *Id.* at 39.
[94] *Id.* at 14.
[95] *Id.*
[96] *Id.* at 16.
[97] *Id.* at 38.
[98] *Id.* at 39.
[99] *Id.*
[100] *Id.* at 40.
[101] *Id.* at 44-45.
[102] *Id.*
[103] *Id.* at 46.
[104] *Id.*

requested to stand which the ALJ allowed.[105]  When his counsel asked how long he can

stand, Plaintiff testified, "no more than probably . . . 15 minutes."[106]  Plaintiff reiterated,

when in a standing position, his headaches increase and significant pressure occurs in

his lower back.[107]

## 2.    Vocational Expert's Testimony

The ALJ asked the vocational expert to consider a hypothetical individual of

Plaintiff's age, education, and work history.[108]  Initially, the ALJ asked her to assume

that the individual

> can perform work at the light exertional level; who can occasionally
> balance, stoop, kneel, crouch, and crawl; who can have occasional
> exposure to extreme heat, humidity, vibration, fumes, odors, dust, gas,
> poor ventilation, and hazards; and who can have exposure to a noise level
> no greater than that found in a typical office environment.[109]

Because Plaintiff's prior job as a security guard required going outside, Ennis testified

that Plaintiff could not return to that position.[110]  The ALJ noted Plaintiff could not return

to the job as a machine operator because the work involves a medium exertional

level.[111]  The ALJ inquired about other available positions that the hypothetical

individual could perform.[112]  Ennis testified that other jobs existed, and she provided

examples of and estimated numbers of such positions currently available in the national

---

[105] *Id.*
[106] *Id.*
[107] *Id.*
[108] *Id.* at 50.
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Id.* at 51.

economy.[113]  Such employment included a routing clerk with approximately 400,000

positions available in the national market, an information clerk with approximately

109,000 positions available, and a retail marker with about 1,000,000 positions.[114]

The next hypothetical included an individual having further need for a break in

the morning and another in the afternoon, requiring the person to lie down for 20

minutes.[115]  Ennis testified that these limitations would impact productivity, and inhibit

the individual from sustaining competitive employment.[116]

The ALJ further questioned Ennis about whether the hypothetical individual

would remain employed if the individual got off task 15 percent or more of the work day

due to headaches.[117]  Ennis responded that the person would not sustain competitive

employment.[118]  Ennis acknowledged that the *Dictionary of Occupations Titles* does not

address the amount of breaks nor the percentage of breaks that would preclude

employment.[119]  She testified that she based her assessment on her experience and

knowledge as a vocational expert.[120]  Ennis confirmed that no conflict existed with the

limitations posed by the ALJ and the jobs she cited.[121]

Plaintiff's attorney asked Ennis the following:  "[i]f a claimant is likely to be absent

from work, as a result of their impairments and symptoms, greater than four days per

---

[113] *Id.*
[114] *Id.*
[115] *Id.*
[116] *Id.* at 52.
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *Id.*
[121] *Id.*

month, would that person be able to maintain employment?"[122]  Ennis testified absence from work for more than four days per month is excessive to sustain competitive employment.[123]

### C. The ALJ's Findings

Based on the medical evidence and testimony presented, the ALJ determined Plaintiff not disabled.[124]  The ALJ's findings are summarized as follows:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.[125]

2. Plaintiff has not engaged in substantial gainful activity since April 24, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).[126]

3. Plaintiff has the following severe impairments:  obesity, obstructive hydrocephalus, degenerative disc disease of the cervical spine, and migraines (20 CFR 404.1520(c)).[127]

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).[128]

5. Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  He can occasionally balance, stoop, kneel, crouch, and crawl.  He can have occasional exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.  He can have no exposure to noise level greater than that found in a typical office environment.[129]

---

[122] *Id.* at 52-53.
[123] *Id.* at 53.
[124] *Id.* at 21.
[125] *Id.* at 13.
[126] *Id.*
[127] *Id.* at 14.
[128] *Id.* at 15.
[129] *Id.*

6.    Plaintiff is unable to perform any past relevant work (20 CFR 404.1565).[130]

7.    Plaintiff was born on October 16, 1971, and is 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).[131]

8.    Plaintiff has at least a high school education and is able to communicate in English (20 CFR 404.1564).[132]

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).[133]

10.   Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 404.1569 and 404.1569(a)).[134]

11.   Plaintiff has not been under a disability, as defined in the Social Security Act, from April 24, 2015, through the date of this decision (20 CFR 404.1520(g)).[135]

As a result, "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on August 13, 2015, [Plaintiff] is not disabled under sections 216(i) and 223(d) of the Social Security Act."[136]

## III.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment

In determining the appropriateness of summary judgment, the court must "review

---

[130] *Id.* at 20.
[131] *Id.*
[132] *Id.*
[133] *Id.*
[134] *Id.*
[135] *Id.* at 21.
[136] *Id.*

the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[137]  If no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[138]

This standard does not change merely because there are cross-motions for summary judgment.[139]  Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[140]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[141]

## B.    Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of an ALJ's decision.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision.  The Commissioner's factual decisions remain if supported by substantial evidence.[142]  Substantial evidence means less than a preponderance of the

---

[137] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).
[138] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).
[139] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[140] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[141] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[142] 42 U.S.C. *§§ 405(g), 1383(c)(3); see also Monsour Medical Center v. Heckle*m, 806 F .2d 1185, 1190 (3d Cir. 1986).

evidence, but more than a mere scintilla of evidence.[143]  As the United States Supreme

Court has found, substantial evidence "does not mean a large or significant amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[144]

In determining whether substantial evidence supports the Commissioner's

findings, the court may not undertake a de novo review of the Commissioner's decision

and may not re-weigh the evidence of record.[145]  The court's review remains limited to

the evidence actually presented to the ALJ.[146]  The Third Circuit has explained, a

> single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence.  Nor is evidence substantial if it is overwhelmed
> by other evidence, particularly certain types of evidence (e.g., evidence
> offered by treating physicians) or if it really constitutes not evidence but
> mere conclusion.[147]

Thus, the inquiry is not whether the court would have made the same

determination, but rather, whether the Commissioner's conclusion was reasonable.[148]

Even if the court would have decided the case differently, it must defer to the ALJ and

affirm the Commissioner's decision so long as that decision is supported by substantial

evidence.[149]

Where "review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the

---

[143] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[144] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[145] *Monsour*, 806 F.2d at 1190.
[146] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001)
[147] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[148] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[149] *Monsour*, 806 F .2d at 1190-91.

agency in making its decision."[150]  In *Securities & Exchange Commission v. Chenery Corp.*,[151] the Supreme Court found that a

> reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.[152]

The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[153]  Thus, this court's review is limited to the four corners of the ALJ's decision.[154]

### C.    ALJ Disability Determination Standard

Title II of the Social Security Act, 42 U.S.C. § 423(a)(l)(D), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[155]  To qualify for DIB, a claimant must establish that he was disabled prior to the date he was last insured.[156]  A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[157]  To be disabled, the severity of the impairment must prevent return to previous work, and considering age,

---

[150] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[151] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).
[152] *Id.*
[153] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001).
[154] *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).
[155] *Bowen*, 482 U.S. at 140.
[156] 20 C.F.R. § 404.131.
[157] 42 U.S.C. §§ 423(d)(l)(A), 1382(c)(a)(3).

education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[158]

## 1. Five-Step Test

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[159] If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further.[160] At the first step, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is so engaged, a finding of non-disabled is required.[161] If the claimant is not, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. If the claimant is not suffering from either, a finding of non-disabled is required.[162]

If the claimant's impairments are severe, the Commissioner, at the third step, compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work.[163] When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled.[164] If a claimant's impairments, either singularly or in combination, fail to meet or medically equal any listing, the analysis continues to steps four and

---

[158] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).
[159] 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d Cir. 1999).
[160] 20 C.F.R. § 404.1520(a)(4).
[161] 20 C.F.R. § 404.1520(a)(4)(i).
[162] 20 C.F.R. §404.1520(a)(4)(ii).
[163] 20 C.F.R. § 404.1520(a)(4)(iii); *see also Plummer*, 186 F.3d at 428.
[164] 20 C.F.R. § 404.1520(a)(4)(iii).

five.[165]  At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work.[166]  A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [his] impairment(s)."[167]  "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work."[168]

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work.[169]  At this last step, the burden rests with the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[170]  In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments, and often seeks the assistance of a vocational expert.[171]

## 2.    Weight Given to Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[172]  Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and

---

[165] 20 C.F.R. § 404.1520(e).
[166] 20 C.F.R.. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428.
[167] *Fargnoli*, 247 F.3d at 40.
[168] *Plummer*, 186 F.3d at 428.
[169] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.
[170] *Id.*
[171] *See id.*
[172] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record.[173]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[174] If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports," and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[175]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion:  rather, it is an opinion on an issue reserved to the ALJ because it is a finding that is dispositive of the case.[176]  Therefore, only the ALJ can make a disability determination.

### 3.      Evaluation of Subjective Accounts of Pain

Statements about the symptoms alone never establish the existence of any impairment or disability.[177]  The Social Security Administration uses a two-step process to evaluate existence and severity of symptoms.[178]

### a.      Existence of Pain

First, the ALJ must find a medically determinable impairment, proven with medically acceptable clinical and laboratory diagnostic data, that could reasonably be

---

[173] *Fargnoli v. Massanari*, 247 F.3d 34,43 (3d Cir. 2001).
[174] *Morales v. Apfel*, 225 F.3d 310, 317 (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).
[175] *Plummer*, 186 F.3d at 429.
[176] *See* 20 C.F.R. § 416.927(e)(1).
[177] *See* 20 C.F.R. §§ 416.928-29.  *See also* SSR 16-3p.
[178] *Id.*

expected to produce the claimant's symptoms.[179]  Otherwise, the ALJ cannot find the applicant disabled, no matter how genuine the symptoms appear to be.[180]

This step does not consider the intensity, persistence and limiting effects of the symptoms on the claimant:  it only verifies whether a medical condition exists that could objectively cause the existence of the symptom.[181]

Analysis stops at this step where the objectively determinable impairment meets an impairment listed on 20 CFR Part 404, Subpart P, Appendix 1, because the claimant is considered disabled *per se*.[182]

### b.    Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities.[183]  At this step, the ALJ must consider the entire record, including medical signs, laboratory findings, the claimant's statements about his symptoms, any other information provided by treating or examining physicians, psychiatrists and psychologists, and any other relevant evidence in the record, such as the claimant's account of how the symptoms affect his activities of daily living and ability to work.[184]  "[A] State agency medical or psychological consultant . . . designated by the Commissioner directly participates in determining whether [claimant's] medically determinable impairment(s) could reasonable be expected to

---

[179] 20 C.F.R. § 416.929(b).
[180] *Id.*
[181] *Id.*
[182] 20 C.F.R. § 416.925.
[183] 20 C.F.R. § 416.929(c).
[184] 20 C.F.R. § 404.1529.

produce [claimant's] alleged symptoms."[185]  Where more information is needed to assess a claimant's impairments, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

(i)  The applicant's account of daily activities;

(ii)  The location, duration, frequency, and intensity of pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v)  Treatment, other than medication, the applicant receives or has received for relief of pain or other symptoms;

(vi)  Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning functional limitations and restrictions due to pain or other symptoms.[186]

### 4.  Evaluation of Plaintiff's Subjective Complaints

The ALJ must consider all of the evidence in the record to evaluate the intensity and persistence of symptoms after the ALJ finds that the claimant has an impairment that someone could reasonably expect to produce those symptoms.[187]  The ALJ

---

[185]  20 C.F.R. § 404.1529(b).
[186]  *See* 20 C.F.R. § 404.1529(c).
[187]  *See* SSR 16-3p.

considers a claimant's symptoms, including pain, and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."[188] Effective as of March 28, 2016, Social Security Ruling ("SSR") 16-3p superseded 96-7p.[189] SSR 96-7p required the ALJ to make a finding as to the credibility of a claimant to determine the weight the ALJ should afford to the claimant's alleged symptoms.[190] The Social Security Administration ("SSA") eliminated the use of the term "credibility" to avoid the potential misunderstanding that the subjective evaluation of a claimant's symptoms is an examination of an individual's character.[191] The SSA initiated SSR 16-3p to "clarify that subjective symptom evaluation is not an examination of an individual's character," but instead requires an ALJ to determine the weight given to a claimant's alleged symptoms based on the consistency of the alleged symptoms with the medical evidence of record.[192] Since the ALJ must rely upon SSRs as precedents in adjudicating cases,[193] and SSR 16-3p supersedes SSR 96-7p, a summary of how the ALJ should evaluate a claimant's subjective complaints follows.

### a. Considerations under SSR 96-7p

A claimant's statements and reports from medical sources and other persons regarding the seven factors noted in Part III(C)(3)(b), along with any other relevant

---

[188] *See Id.*
[189] *See Id.*
[190] *See* SSR 96-7p.
[191] *See* SSR 16-3p.
[192] *See Id.*
[193] See 20 C.F.R. § 402.35

information in the record, provide the ALJ with an overview of the subjective complaints, used to determine the claimant's credibility.

Consistency with the record, particularly medical findings, supports a claimant's credibility. Clinical observations often reveal the effects of a claimant's symptoms, and they tend to lend credibility to a claimant's allegations. Therefore, the adjudicator should review and consider any available objective medical evidence concerning the intensity and persistence of pain or other symptoms in evaluating the claimant's statements.

Persistent attempts to obtain pain relief, increasing medications, trials of different types of treatment, referrals to specialists, or changing treatment sources may indicate that the symptoms are a source of distress and generally support a claimant's allegations. An applicant's claims, however, may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.

Findings of fact by state agency medical and psychological consultants and other physicians and psychologists regarding the existence and severity of impairments and symptoms, and opinions of non-examining physicians and psychologist are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one elements in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and

may use it at each subsequent step.

The decision must clearly explain, that is, provide sufficiently specific reasons based on the record, to the claimant and any subsequent reviewers, regarding the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when evaluating the credibility of his testimony or statements.[194] A claimant's testimony is accorded substantial credibility when he has a long work history, if it is unlikely that, absent pain, he would have ended employment.[195]

### b.    Considerations under SSR 16-3p

Unlike SSR 96-7p, SSR 16-3p does not use the term "credibility." The SSA eliminated this term to "clarify that subjective symptom evaluation is not an examination of an individual's character."[196] A claimant's statements, reports from medical sources and other persons, and any other relevant information in the record, provide the ALJ with an overview of the subjective complaints to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. The weight afforded to a claimant's statements depends on the consistency with the medical evidence of record. Where SSR 96-7p requires the ALJ to look at consistencies and

---

[194] See 20 C.F.R. § 404.1529(a)(3).
[195] See *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981). In Podedworny, the claimant worked for thirty-two years as a crane operator for one company. He had a ninth grade education and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.
[196] SSR 16-3p.

inconsistencies in the record to determine credibility, under SSR 16-3p, the ALJ reviews the claimant's statements to determine their consistency with the record medical evidence to decide the weight afforded the claimant's statement in making a disability determination. SSR 16-3p states that the ALJ must make a disability determination based on the claimant's statements about his symptoms along with evidence in the record relevant to the alleged impairments.

In evaluating an individual's symptoms, the ALJ may "not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." Instead, the ALJ must "focus on whether the record evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms . . . ." Based on an ALJ's evaluation of the record and the claimant's alleged symptoms, the ALJ must determine whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.

### 5. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which requires the ALJ to apply informed judgment.[197] At the hearing, the ALJ should call on the services of a medical advisor when onset must be inferred.[198]

---

[197] *See* SSR 83-20.
[198] *Id.*

## IV.     DISCUSSION

### A.      Parties' Contentions

Plaintiff maintains that the ALJ committed legal error in his determination of Plaintiff's residual functional capacity ("RFC") by failing to give deference to the treating physicians' opinions of record, relying instead upon outdated opinions from non-specialist state agency physicians and his own lay interpretation of complex medical findings.[199]  Based on the evidence in the record, the ALJ found that Plaintiff has impairments that limit Plaintiff's ability to perform certain work activities, but not to the extent required for a finding of disability under the Act.[200]  Plaintiff argues that the ALJ erred by not giving significant deference to the assessments of Plaintiff's treating physicians.[201]  Furthermore, Plaintiff submits that the ALJ did not give significant weight to the medical records in evidence and instead relied upon his own expertise.[202]  Plaintiff asserts that the ALJ gave no deference to any treating physician opinion and only gave weight to state agency physicians.[203]  Despite that the ALJ considered the four broad areas of mental functioning to evaluate whether Plaintiff had a mental disorder, Plaintiff claims that the ALJ should have completed a full evaluation of his depression.[204]  Lastly, Plaintiff argues that the ALJ failed to properly evaluate the credibility of Plaintiff's subjective complaints.[205]

---

[199] D.I. 16 at 3.
[200] D.I. 9-2 at 14, 21.
[201] D.I. 16 at 3.
[202] *Id.* at 4.
[203] *Id.* at 5.
[204] *Id.* at 7.
[205] *Id.* at 8-10.

Defendant argues that substantial evidence supports the ALJ's decision.[206] Defendant asserts that substantial evidence supports the weight the ALJ assigned to Plaintiff's treating physicians' opinions and the finding of inconsistencies between Plaintiff's subjective complaints and the record regarding his alleged symptoms.[207]

Defendant contends that Plaintiff's treating physicians' opinions lacked explanations, and were inconsistent with their own records and with the other medical evidence of record.[208]  Furthermore, Defendant argues that substantial evidence supports the ALJ's conclusion that Plaintiff did not have sever depression, as alleged.[209] Defendant asserts that the ALJ has the "exclusive" duty to evaluate the record evidence,[210] and that this court should affirm because the ALJ provided relevant evidence that a reasonable mind would accept to support his conclusion.[211]

## B.    Appropriateness of the ALJ's Assessment

In determining whether the ALJ properly applied the legal standards for his determination is based on whether "substantial evidence" supports his decision.[212]

Plaintiff's overarching contentions are (1) the ALJ erred by failing to give deference to the treating physicians' opinions of record, and (2) the ALJ did not properly evaluate the credibility of his subjective complaints.[213]  Therefore, this court must

---

[206] D.I. 20 at 8.
[207] *Id.* at 2.
[208] *Id.* at 9.
[209] *Id.* at 16.
[210] *Id.* at 9.
[211] *Id.* at 20.
[212] *See supra* part III (B).
[213] D.I. 16 at 3,8.

determine whether the ALJ's reasoning met the required standards for a determination on disability.[214]

### 1. The ALJ's RFC Finding

Plaintiff alleges the ALJ's RFC finding is not supported by substantial evidence.[215] An RFC establishes what an individual can do in a work setting despite impairments and limitations.[216] In making this finding, the ALJ must consider all of Plaintiff's impairments, including impairments lacking severity.[217] Although the ALJ may weigh the credibility of the evidence, he must indicate the evidence which he rejects and his reason(s) for discounting such evidence.[218] Although all evidence in the record must be considered, the ALJ has the exclusive responsibility for determining an individual's RFC.[219]

In the instant matter, the ALJ determined Plaintiff had the residual functional capacity to perform light work,[220] with postural and environmental limitations.[221] The SSA defines work as "light" as "ilifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[222] Even though an individual may only be able to perform "light work," this does not mean that the person is

---

[214] *See supra* part III (C).
[215] D.I. 16 at 5.
[216] 20 C.F.R. § 404.1545.
[217] *Id.*
[218] *See Plummer*, 186 F.3d at 429.
[219] 20 C.F.R. § 404.1527(d)(2).
[220] D.I. 9-2 at 18.
[221] *Id.* at 19.
[222] 20 C.F.R. § 416.967(b).

restricted from performing a job that requires "a good deal of walking or standing, . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."[223] Moreover, under the SSA, medically determinable impairments that impose limitations and restrictions on an individual's ability to work are considered in determining one's residual functional capacity.[224]

This court finds that the ALJ properly applied the correct standards under the agency regulations, and substantial evidence supports the ALJ's decision. In determining Plaintiff's RFC, the ALJ considered all symptoms and the extent to which they were consistent with the record evidence. Additionally, he considered all opinion evidence.[225] The ALJ properly analyzed the entire record and sufficiently explained the weight afforded to each source.

## 2. Weight Accorded to Medical Opinion Evidence

Consistent with the regulations, the ALJ considered the record as a whole in assessing Plaintiff's RFC. Therefore, because his decision is supported by substantial evidence, the ALJ did not error when determining Plaintiff's RFC by excluding certain limitations based on his alleged impairments. The ALJ found that a reasonable person could expect that Plaintiff's medically determinable impairments may cause the alleged symptoms; however, he concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms lacked credibility.[226] The ALJ listed

---

[223] *Id.*
[224] 20 C.F.R. § 1545(d).
[225] D.I. 9-2 at 18-20.
[226] *Id.* at 16.

Plaintiff's alleged symptoms and explained his reasons for rejecting certain limitations referencing specific medical evidence in the record, or the lack thereof.

Plaintiff, citing *Brownawell v. Comm'r of Soc. Sec*, 554 F.3d 352, 355 (3d Cir. 2008), argues that this court must remand this case for further evaluation of the medical evidence of record because the ALJ gave no deference to any treating physician opinion and only gave some weight to state agency physicians.[227]  However, the ALJ afforded "great weight" to an opinion of Dr. Varipapa, a treating neurologist.[228]  Dr. Varipapa opined that Plaintiff is not capable of performing the physical demands of his occupation, and the ALJ agreed by holding that Plaintiff can not perform any past relevant work.[229]

Even if the ALJ did not afford any weight to Plaintiff's treating physicians, this does not make his findings unjustified.  In *Brownawell v. Comm'r of Soc. Sec.*, the Third Circuit explicitly stated that an ALJ may reject a treating physician's opinion outright where contradictory medical evidence exists.[230]  "A treating physician's opinion on the nature and severity of an impairment will be given controlling weight *only* where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[231]  While an ALJ may give a treating physician's conflicting opinion less than controlling weight, or even

---

[227] D.I. 16 at 1, 3-5, 7.
[228] D.I. 9-2 at 19.
[229] *Id.* at 20.
[230] *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008).
[231] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007) (emphasis added) (quoting *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001).

reject it, in doing so, the ALJ must explain his reasoning.[232]

In this case, whenever a treating physician's opinion was rejected, the ALJ properly explained his basis by noting the inconsistencies. As for the opinion of Dr. Rastogi, Plaintiff's neurologist, the ALJ pointed to the record which demonstrates that Plaintiff is not as limited as Dr. Rastogi opined, specifically on September 23, 2015 where the doctor opined that Plaintiff's hydrocephalus symptoms were improving, and in October 2015 where Dr. Rastogi restricted Plaintiff to no lifting, pushing, pulling, or working from September 23, 2015 to September 7, 2016.[233] In light of Dr. Rastogi's contradicting findings and opinions regarding Plaintiff's limitations, the ALJ properly afforded no weight to Dr. Rastogi's opinion that Plaintiff is unable to work.[234] It is well established that the ALJ makes the ultimate disability and RFC determinations, not a treating physician.[235]

The ALJ properly afforded no weight to Dr. Rastogi and Joseph W. Reynolds, PA-C's January 2017 recommendation of permanent disability for Plaintiff by noting specific treatment in the record.[236] The ALJ found Dr. Rastogi and Joseph W. Reynolds, PA-C's recommendations for permanent disability inconsistent with treatment records that show improved symptomatology.[237] Specifically, the ALJ cited a July 2015

---

[232] *Id.*
[233] D.I. 9-2 at 18-19.
[234] *Id.* at 19.
[235] Id. at 19; D.I. 20 at 12 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d. Cir. 2011).
[236] D.I. 9-2 at 19.
[237] *Id.*

medical report stating that Plaintiff "is doing well from a neurological standpoint."[238] Additionally, the ALJ cited a 2017 Progress Note by Dr. Varipapa that noted Plaintiff's headaches improved since January 2017.[239]

Both Plaintiff and Defendant addressed the ALJ's application of a check-box form opinion provided by Dr. Varipapa regarding Plaintiff's ability to perform physical work-related activities.[240]  Defendant contends that the ALJ was permitted to discount Dr. Varipapa's opinion because checking boxes was "weak evidence at best."[241]  In opposition, Plaintiff argues that the ALJ could not reject a treating physician's opinion merely because the opinion was made by checking boxes.[242]  The court does not have to reach a decision as to whether an ALJ may reject an opinion merely because it was provided by checking boxes.  If the ALJ provided substantial evidence in the record that contradicts the opinion contained in any form by a treating physician, the ALJ is permitted to reject the opinion.[243]  Therefore, the only question is whether the ALJ provided substantial evidence to support his decision to afford no weight to Dr. Varipapa's check-box opinion.[244]  The ALJ provided substantial evidence to support his decision by referencing past physical examinations that did not reference nor show Plaintiff had such limitations as Dr. Varipapa described on the form.[245]  The fact that no

---

[238] *Id.*
[239] *Id.*
[240] D.I. 20 at 13-14; D.I. 21 at 2.
[241] D.I. 20 at 13.
[242] D.I. 21 at 2.
[243] *See Brownawell*, 554 F.3d 352, 355 (3d Cir. 2008).
[244] *See supra* part III.
[245] D.I. 9-2 at 19.

prior physical examinations showed that Plaintiff had the limitation that was checked off on the form contradicted other medical evidence in the record, permitting the ALJ to afford no weight to Dr. Varipapa's check-box form opinion.

Furthermore, Plaintiff argues that, by relying on two opinions of non-specialist state agency physicians whose opinions were "based on a review of very little of the medical evidence of record," the ALJ committed legal error.[246] The ALJ does not have to adopt state agency physicians' findings, but must consider them because the state agency physicians are "highly qualified and experts in Social Security disability evaluation."[247] The position of a state agency physician does not require specialization to diagnose every impairment, disease, and health issue of an individual.[248] Rather, a state agency physician must have the expertise to evaluate an individual's disabilities to enable the ALJ to determine whether an individual is legally disabled.[249] Plaintiff merely lists evidence in the record that occurred after the state agency physicians' rendered opinions.[250] Even if the state agency physicians did not review all of the evidence up to the ALJ rendering a decision, the record shows that the ALJ considered all of the evidence in the record, and the ALJ decides disability and the RFC.[251]

Plaintiff's final substantive argument regarding the weight accorded to the medical opinion evidence purports that the ALJ should have ordered a consultative

---

[246] D.I. 16 at 5-7.
[247] 20 C.F.R. § 404.1513(b)(1).
[248] *See Id.*
[249] *See Id.*
[250] D.I. 16 at 5-6.
[251] *Chandler*, 667 F.3d at 361.

evaluation or conducted further investigation to determine whether Plaintiff's depression affects his ability to work.[252] An "ALJ[']s duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision . . . [T]he decision to order a consultative examination is within the sound discretion of the ALJ."[253] While evaluating Plaintiff's depression pursuant to 20 C.F.R. § 404.1520a, the ALJ pointed to substantial evidence in the record to support his finding that Plaintiff's depression was not severe.[254] As required by 20 C.F.R. § 404.1520a, the ALJ considered the following four areas of mental functioning to rate Plaintiff's degree of functional limitation: his ability to understand, remember, or apply information; his interaction with others; his concentration, persistence or ability to maintain pace; and his ability to adapt or manage himself.[255] For example, regarding the last functional area, the ALJ properly decided that Plaintiff had no limitation because, consistent with the record, he was able to perform personal care tasks with no problem, could drive and prepare simple meals, shop, and do household chores.[256]

Plaintiff contends that the ALJ impermissibly speculated about the impact of his medical conditions on his ability to work.[257] This argument is without merit: the ALJ only afforded some weight to state agency physicians' opinions of Plaintiff's limitations

---

[252] D.I. 16 at 7.
[253] *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002).
[254] D.I. 9-2 at 14-15.
[255] *Id.*
[256] *Id.* at 14.
[257] D.I. 16 at 8.

while applying great weight to an opinion by Dr. Varipapa.[258]  Where the ALJ did not rely

on certain opinions or findings, he pointed to substantial evidence in the record to

support his conclusion.[259]

### 3.    Evaluation of Plaintiff's Subjective Complaints

In his briefing, Plaintiff employed the term "credibility," arguing that the ALJ failed

to properly evaluate the credibility of his subjective complaints.  However, as Defendant

noted, SSR 16-3p supersedes SSR 96-7p "Policy Interpretation Ruling Titles II and XVI:

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

Statements," effective March 28, 2016.  Despite this change, analyzing this case under

either of the SSRs will lead to the same result.

### (a)    Analysis Under SSR 96-7p

As required by the regulations, the ALJ's decision clearly explained and provided

sufficiently specific reasons based on the record, the weight afforded to Plaintiff's

statements.[260]  The ALJ reasonably gave Plaintiff's testimony little weight, as many of

his statements contradicted the objective evidence of record.  The record, as a whole,

supported the ALJ's finding that Plaintiff lacked credibility.

Plaintiff argues that the ALJ erred in making legal and factual findings as to the

credibility of his subjective complaints, and contends reversal of the ALJ's decision is

warranted.[261]  First, Plaintiff maintains that the ALJ's finding that the record did not

---

[258] D.I. 9-2 at 19.
[259] D.I. 16 at 7.
[260] *See supra* Part III (C)(6).
[261] D.I. 16 at 8.

support Plaintiff's complaints of memory and cognition problems by any cognitive or neurological testing was inaccurate because Dr. Varipapa diagnosed him with short-term memory loss, and a therapist noted clinical signs of an impaired memory.[262] In determining Plaintiff's credibility, the ALJ relied on a doctor's visit where Plaintiff never mentioned memory or cognition problems, but then nine months later underwent cognitive and neurological testing.[263] As a result of this testing, Plaintiff was diagnosed with short-term memory loss, even though during the test, Plaintiff needed very little computer clarification and had minimal difficulties following the program.[264] Such evidence supports the ALJ's finding on Plaintiff's credibility.

Plaintiff further argues that the ALJ incorrectly found lack of credibility by noting one statement he made, and purportedly ignored evidence that both Plaintiff and his wife rely upon their daughters to perform all household chores.[265] Despite Plaintiff's arguments to the contrary, the court finds the additional evidence inconsistent with Plaintiff's position because in a June 2016 examination, he stated that he is the only caregiver for his wife who has MS and is wheelchair bound.[266] The ALJ clearly explained and provided sufficiently specific reasons based on the record to support the weight he afforded to Plaintiff's subjective complaints.

### (b)    Analysis Under SSR 16-3p

As addressed in Part III(C)(4)(b), SSR 96-7p requires the ALJ to consider

---

[262] *Id.*
[263] D.I. 9-2 at 18 (citing Exhibits 8F/13 and 11F/10).
[264] *Id.*
[265] *Id.*
[266] D.I. 9-2 at 18 (citing Exhibit 8F/1).

consistencies and inconsistencies in the record to determine the credibility of the claimant.[267]  SSR 16-3p still requires the ALJ to evaluate the consistencies and inconsistencies in the record to determine the weight afforded to the claimant's statements.[268]  However, the ALJ is to "focus on whether the record evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms . . ." and assess whether a claimant's statements are consistent with the record to determine the weight afforded the claimant's comments.[269]

In the instant matter, the ALJ properly found, based on substantial evidence, that the record did not support that Plaintiff had a medically determinable impairment of memory loss because a February 2016 note did not indicate Plaintiff having memory difficulties,[270] while an October 2016 note indicated that he had been having memory difficulties for two years.[271]  Moreover, when Plaintiff did undergo cognitive and neurological testing in November 2016, resulting in a finding of some short-term memory loss, Plaintiff had little or no difficulty in performing and following the testing/program.[272]  The ALJ properly noted the inconsistencies with Plaintiff's subjective complaints, which support the weight afforded.

Plaintiff also maintains that the ALJ failed to properly evaluate his credibility by

---

[267] *See supra* Part III(C)(4)(b).
[268] *See Id.*
[269] *See Id.*
[270] D.I. 9-12 at 608.
[271] D.I. 9-13 at 680.
[272] D.I. 9-2 at 18 (citing Exhibits 8F/13 and 11F/10).

erroneously relying on a single statement by Plaintiff indicating that he was the "'only caregiver'" for his wheelchair bound wife, when in fact, Plaintiff and "his wife relied upon their daughters to perform all household chores."[273]  Under SSR 16-3p, the question rests on whether the single statement is consistent with other evidence in the record to decide the weight afforded to Plaintiff's statement(s).[274]  The ALJ, under SSR 16-3p, properly evaluated Plaintiff's symptoms, found that his statement was inconsistent with other evidence in the record, and properly attributed the correct weight to his subjective complaints in determining whether his medically determinable impairments could reasonably be expected to produce the symptomology.  Therefore, substantial evidence supports the ALJ's decision that Plaintiff is not disabled and his subjective complaints were inconsistent with and unsupported by the record evidence.

## V.      RECOMMENDED DISPOSITION

Consistent with the findings above,

IT IS RECOMMENDED that:

1.  Plaintiff's motion for summary judgement (D.I. 15) be DENIED.

2.  Defendant's motion for summary judgement (D.I. 19) be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response shall be limited to ten (10) pages and filed within fourteen (14) days

---

[273] D. I. 16 at 9.
[274] *See supra* Part III(C)(4)(b)

39

thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under Fᴇᴅ. R. Cɪᴠ. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.)


Date: April 26, 2019                    /s/ Mary Pat Thynge
                                        Chief U.S. Magistrate Judge